IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX O. GUILLORY,<br><br>    Plaintiff,<br><br>    v.<br><br>HSBC BANK, USA, et al.,<br><br>    Defendants. | Case No. 16-cv-03868-MMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: Dkt. No. 61 |

Before the Court is plaintiff Felix O. Guillory's "Motion for Attorney's Fees and Costs," filed October 2, 2017. Defendants[1] have filed opposition, to which plaintiff has replied. The matter came on regularly for hearing November 17, 2017. Tesfaye W. Tsadik appeared on behalf of plaintiff. Laszlo Ladi of Severson & Werson appeared on behalf of defendants. Thereafter, plaintiff filed a letter brief, to which defendant has responded. Having read and considered the papers filed in support of and in opposition to the motion, and the arguments of counsel at the hearing, the Court hereby rules as follows.

**BACKGROUND**

On July 11, 2016, plaintiff, proceeding pro se, filed a complaint against defendants, in which he sought, pursuant to the California Homeowners Bill of Rights ("HBOR"), an injunction to stop defendants from foreclosing on his Oakland, California

---

[1] Defendants are (1) America's Servicing Company, a Division of Wells Fargo Home Mortgage, (2) Wells Fargo Home Mortgage, a Division of Wells Fargo Bank, N.A., and (3) HSBC Bank USA, N.A., as Indenture Trustee for First NLC Trust 2005-3, Mortgage-Backed Notes, 2005-3.

residence. At that time, the foreclosure was scheduled for July 13, 2016. In his complaint, plaintiff alleged that defendants were violating the HBOR by engaging in "dual tracking," i.e., proceeding with foreclosure proceedings while plaintiff's allegedly "complete application"[2] for a loan modification was pending. (See Compl. ¶ 33.)[3]

Concurrent with his complaint, plaintiff filed an "Ex Parte Application for a Temporary Restraining Order and Request for Order to Show Cause Re: Preliminary Injunction," which application the Court granted by order filed July 12, 2018. In said order, the Court directed defendants to show cause, at a hearing scheduled for July 21, 2016, why a preliminary injunction enjoining defendants from foreclosing upon the subject real property should not be entered, directed plaintiff to serve defendants with a copy of the Court's order, and, pending the July 21 hearing, temporarily restrained defendants from foreclosing upon the property.

On July 21, 2016, plaintiff appeared for the hearing; no defendant appeared. At the hearing, the Court determined plaintiff had not served defendants, but, rather, had served a law firm that represented Quality Loan Service Corporation ("Quality"), which was the trustee and a non-party to the instant action. Thereafter, the Clerk of Court was able to contact the trustee's counsel, who then appeared telephonically and informed the Court he had been advised by defendants that the foreclosure sale had been rescheduled for August 26, 2016. The Court then directed plaintiff to serve defendants by August 1, 2016, and continued the hearing to August 19, 2016.

---

[2] "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification is pending." Cal. Civ. Code § 2923.6(c).

[3] Additional HBOR violations alleged by plaintiff stemmed from his submission of an application for a loan modification, specifically, his claims that his "single point of contact" did not respond to his communications about the application (see Compl. ¶¶ 22, 26, 34), that defendants recorded a notice of default prior to discussing with plaintiff "foreclosure alternatives" such a loan modification (see Compl. ¶ 35), and that defendants did not acknowledge in writing receipt of his application (see Compl. ¶ 36).

On August 9, 2016, defendants appeared by filing an Administrative Motion to Change Time, in which they sought an order vacating the August 19 hearing. In support thereof, defendants stated they intended to review plaintiff's application for a loan modification, were "willing to voluntarily postpone the sale . . . until October 26, 2016," and agreed to the Court's entering an order "maintaining in place the TRO that prevent[ed] defendants from moving forward with foreclosure" while "plaintiff's loan modification application [was] under review." (See Defs.' Admin. Mot. at 3:10-14.) The next day, August 10, 2016, the Court granted defendants' administrative motion, and, with respect to injunctive relief, ordered as follows: "Defendants shall cause the trustee's sale of the property [at issue] to be postponed to October 26, 2016, or later." (See Order, filed August 10, 2016, at 2:7-8.)

On September 8, 2016, the Court granted plaintiff's motion to substitute Tesfaye W. Tsadik's ("Tsadik") as his counsel of record.

On September 30, 2016, the parties filed a Joint Status Conference Statement, in which they advised the Court that defendants had requested, and plaintiff had agreed to submit, further documentation in support of the application for a loan modification. On October 6, 2016, the Court conducted a status conference, at which time the Court, "[p]ursuant to the stipulation of the parties," continued the date of the trustee's sale to January 18, 2017. (See Civil Minutes, filed October 6, 2016.)

On December 2, 2016, the Court conducted a Case Management Conference, at which the time the Court, "[p]ursuant to the stipulation of the parties," continued the date of the trustee's sale to March 1, 2017. (See Civil Minutes, filed December 2, 2016.)

In a stipulation filed April 7, 2017, the parties advised the Court they had agreed to a "trial payment plan ('TTP')" and "expected that completion of the TPP [would] lead to a permanent loan modification." (See Stip., filed April 7, 2017, ¶¶ 5-7.)

On August 7, 2017, the parties entered into a loan modification agreement (see Ladi Decl., filed October 16, 2017, ¶ 2), and, on August 15, 2017, the trustee recorded a "rescission of the notice of default on the subject deed of trust" (see id. ¶ 3).

3

On September 19, 2017, the Court, upon stipulation of the parties, dismissed plaintiff's complaint with prejudice and retained jurisdiction to consider whether plaintiff was entitled to attorney's fees and costs. On October 2, 2017, plaintiff, as noted, filed the instant motion for an award of attorney's fees and costs.

**DISCUSSION**

As noted, plaintiff alleged in his complaint that defendants violated the HBOR. The HBOR includes the following "attorney's fees and costs" provision, under which plaintiff seeks an award:

> A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to [the HBOR]. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

See Cal. Civil Code § 2924.12(i).

The parties dispute whether plaintiff is a "prevailing borrower" for purposes of § 2924.12(i), and, if so, the amount of the award to which plaintiff is entitled.

**A. Prevailing Borrower**

As set forth above, the definition of a "prevailing borrower" under § 2924.12(i) includes a plaintiff who "obtained injunctive relief." See id. The term "injunctive relief" as used therein has been interpreted by the California Court of Appeal to include preliminary injunctions, and, consequently, a borrower who obtains a preliminary injunction is a "prevailing borrower," even if the borrower later "pursues but fails to obtain a permanent injunction." See Monterossa v. Superior Court, 237 Cal. App. 4th 747, 749, 757 (2015).

Defendants argue plaintiff is not a "prevailing borrower," as he did not obtain a preliminary injunction, but, rather, a temporary restraining order. District courts to have considered the issue, however, have found a temporary restraining order constitutes "injunctive relief" for purposes of § 2924.12(i), at least where the terms of a temporary restraining order remain in effect for a significant period of time without objection by the defendant. See Warren v. Wells Fargo & Co., 2017 WL 4541730, at *7 (S. D. Cal. October 11, 2017) (finding plaintiff was "prevailing borrower" where plaintiff "secure[d] a

temporary restraining order enjoining the sale of the [p]roperty for over nine months");
Lac v. Nationstar Mortgage LLC, 2016 WL 4055041, at *1-2 (E.D. Cal. July 27, 2016) (finding plaintiff was prevailing borrower where defendant did not oppose issuance of temporary restraining order, which remained in effect for sixty days).

Here, the restraining order, first issued July 12, 2016, remained in effect until March 1, 2017, i.e., for a period of seven and a half months, defendants having agreed to all but the first twenty days, which predated their initial appearance in the case. Under the circumstances, the Court finds plaintiff, having obtained an order precluding foreclosure for a period of seven and a half months, is a prevailing borrower for purposes of § 2924.12(i).

## B. Amount of Attorney Fees

Under state law, "a court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney involved." See Ketchum v. Moses, 24 Cal. 4th 1122, 1131-32 (2001) (internal quotation, citation and alteration omitted).[4] "[A]n attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." Id. at 1133.

Here, plaintiff seeks an award that includes compensation for 157.3 hours spent by Tsadik. According to plaintiff, 19 of those 157.3 hours were for "researching and drafting [the fee] motion and supporting papers" (see Pl.'s Mot. at 11:19-20), 20.6 hours were for preparation of the reply (see Supp. Tsadik Decl. ¶ 4), and the remaining 117.7 hours were spent "representing plaintiff in this litigation" (see Pl.'s Mot. at 10:11-12).

### 1. Time Spent on Work Other than Work Related to Fees

As noted, plaintiff seeks a fee award that includes compensation for 117.7 hours Tsadik spent on tasks other than seeking fees. As to those 117.7 hours, 64.4 hours are

---

[4]Where, as here, a plaintiff prevails on a state law claim, a district court applies state law in determining both the right to fees and the calculation thereof. See Mangold v. California Public Utilities Commission, 67 F.3d 1470, 1478 (9th Cir. 1995).

attributable to work related to plaintiff's loan modification application, and 53.3 hours are attributable to tasks related to case management and other matters not related to loan modification.[5]

### a. Work Related to Loan Modification

As noted, plaintiff seeks an award that includes compensation for 64.4 hours related to plaintiffs' application for a loan modification.[6]

At the outset, defendants contend such work, although performed by Tsadik, was "[c]lerical and secretarial," and, consequently, plaintiff is not entitled to recover for any such hours. (See Defs.' Opp. at 10:25.) The Court disagrees with defendants' characterization of the work as clerical or secretarial. Rather, some of the work, which the Court finds comprises 35.7 of the 64.4 hours claimed, constitutes legal work, specifically, negotiating the terms of the modification agreement, researching the process for removing liens recorded against plaintiff's property, and researching the applicability of a city inspection ordinance. Other work, which the Court finds comprises 28.7 of the 64.4 hours claimed, is more properly characterized as paralegal in nature, specifically, compiling and forwarding to defendants additional information defendants requested for purposes of determining plaintiff's eligibility for a modification, and those hours, to the extent reasonable, are compensable at a paralegal rate. See Guinn v. Dotson, 23 Cal. App. 4th 262, 269 (1994) (holding award of attorney's fees includes "paralegal services deemed reasonable by the court").

Defendants next argue that none of the loan modification work performed after August 7, 2017, the date the parties entered into the loan modification agreement, is

---

[5]The Court's finding as to these amounts, as well as all other figures set forth herein, is based on the Court's review of the "Timesheet" submitted by Tsadik. (See Tsadik Decl. Ex. A.)

[6]As further noted, the statute under which plaintiff brought the instant lawsuit requires submission of a "complete application." See Cal. Civ. Code § 2923.6(c). It appears the parties entered into loan modification negotiations in an attempt to settle the issue of whether the application submitted was "complete."

6

compensable, because, as defendants point out, plaintiff's HBOR claim became moot at that point. In particular, an HBOR claim becomes moot when the plaintiff has notice the defendant has ceased engaging in the conduct alleged to be in violation of the HBOR, and, as of that date, the plaintiff is not entitled to recover for any further work incurred to establish liability. See Pearson v. Green Tree Servicing, LLC, 2015 WL 632457, at *6 (N.D. Cal. February 13, 2015) (holding prevailing borrower entitled to recover, in addition to fees incurred in seeking award of fees and costs, reasonable fees incurred up to date HBOR claim became moot). Here, as noted, plaintiff alleged that defendants engaged in "dual tracking" by initiating foreclosure proceedings at a time they allegedly had before them plaintiff's complete application for a modification. (See Compl. ¶ 33.) Such alleged violation ceased August 7, 2017, the date on which any dual tracking ceased, defendants having made a determination as to plaintiff's request for a loan modification.

Accordingly, plaintiff is not entitled to recover fees for any time spent on the loan modification after said date, which figure, as defendants point out, comprises 5.9 hours of the legal work claimed.

Defendants next argue the remaining 58.5 hours of work, even if not clerical or secretarial, was in large part "unnecessary" and, consequently, should not be awarded. (See Defs.' Opp. at 11:5-7.) The Court, having reviewed the record, finds the following 12 hours of legal work and 12.4 hours of paralegal work are not compensable, in that the time spent was excessive: (1) 3.0 of the 3.2 hours of legal work spent researching and challenging the applicability of a city ordinance that was clearly applicable (see Ladi Decl. ¶ 8); see Oakland Municipal Code § 8.54.310B; (2) 9.0 of the 11.7 hours of legal work and 0.9 of the 1.5 hours of paralegal work spent addressing defendants' request for authorization to resolve liens on the property (see Ladi Decl. ¶ 9); (3) the entirety of the 1.5 hours of paralegal work spent obtaining and resubmitting to defendants a tax form defendants previously had advised Tsadik the Internal Revenue Service had rejected (see id. ¶ 6); and (4) 10.0 of the 25.7 hours of paralegal work spent obtaining and submitting to defendants other information requested by defendants (see id. ¶¶ 4-5, 10).

7

1  The Court finds the remaining hours spent on the loan modification, specifically, 17.8 of legal work and 16.3 hours of paralegal work, were reasonably spent.

### b. Work Related to Case Management/Other Matters

As noted, 53.5 of the claimed hours pertain to case management and other matters not related to loan modification. In particular, such work includes Tsadik's reviewing the case file prior to appearing as counsel of record, preparing for and appearing at case management conferences, researching law applicable to HBOR proceedings, reviewing defendants' answer, preparing and filing various court documents, communicating with the district court's Alternative Dispute Resolution Unit ("ADR Unit"), and preparing for and attending a court-sponsored mediation.

With respect to such claimed hours, defendants make two arguments.

First, defendants contend no fees should be awarded for time spent after August 7, 2017, which, as noted, is the date the parties entered into a loan modification agreement. The Court is not persuaded. Although, as set forth above, plaintiff is not entitled to recover attorney's fees incurred to establish liability after August 7, the other time claimed after August 7 was spent performing work on matters not related to liability. Specifically, such time was spent preparing for and attending a court-sponsored mediation at which the parties attempted to settle the remaining claim for attorney's fees and costs, preparing a case management conference statement that included a proposal by plaintiff to resolve said remaining claim, and negotiating and preparing a stipulation of dismissal. Such work, to the extent reasonable, is compensable. See Sierra Club v. E.P.A., 75 F. Supp. 2d 1125, 1149 (N.D. Cal. 2014) (holding time spent on "settlement efforts," even where "unsuccessful," are "recoverable") (collecting cases).

Next, defendants argue Tsadik's timesheet entries "reflect significant inefficiencies and bill padding" (see Defs.' Opp. at 11:10-11), and, consequently, the number of compensable hours should be reduced. The Court, having reviewed the record, finds the following 13.2 hours of work are not compensable, in that the time spent was excessive: (1) 4.6 of the 7.6 hours spent reviewing and preparing three joint case management

statements that were primarily drafted by defense counsel (see Defs.' Opp. at 11:18-25, 12:7, 12:10); (2) 0.3 of the 0.6 hours spent reviewing district court notification of the filing of stipulations Tsadik had signed (see id. at 11:11-14); (3) 0.8 of the 1.3 hours spent discussing with plaintiff alternative dispute resolution options available through the district court (see id. at 11:19-20; Tsadik Decl. Ex. A at 3 (11/17/2016 entries)); (4) 1.1 of the 1.3 hours spent reviewing an email from the ADR Unit scheduling a phone conference (see Tsadik Decl. Ex. A at 3 (11/22/2016 entry)); (5) the entirety of 1.1 hours spent reviewing an email from the ADR Unit notifying Tsadik of his failure to comply with a court order and communicating with defense counsel about said failure (see id. Ex. A at 2 (11/16/16 entries)); (6) the entirety of 1.6 hours spent rescheduling ADR conferences necessitated by Tsadik's failure to appear at previously scheduled conferences (see Defs.' Opp. at 11:14-17; Tsadik Decl. Ex. A at 4 (3/6/17 and 3/7/17 entries)); and (7) 3.7 of the 6.7 hours spent preparing a stipulation of dismissal (see Tsadik Decl. Ex. at 9).

The Court finds the remaining hours spent on case management and other non-loan modification matters, specifically, 40.3 hours, were reasonably spent.

**2. Hourly Rate**

Plaintiff argues that a reasonable hourly compensation for Tsadik is $750. In support thereof, plaintiff relies on fee awards made in five cases litigated in this district and in which hourly rates ranging from $400 to $900 were approved.[7]

//

---

[7]Plaintiff also relies on the "Laffey matrix," an "inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C." See Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010). The Laffey matrix indicates the hourly rate for an attorney with twenty or more years of experience is $826 for the period June 2016 through May 2017, and $864 for the period June 2017 through May 2018. (See Tsadik Decl. Ex. B.) "[J]ust because the Laffey matrix has been accepted in the District of Columbia," however, "does not mean that it is a sound basis for determining rates elsewhere." See Prison Legal News, 608 F.3d at 454 (affirming award of fees, where district court declined to use Laffey matrix; noting "it is questionable whether the matrix is a reliable measure even in [adjacent state]"). Further, as discussed below, the instant action was Tsadik's first mortgage-related action, and there is no showing the rates in the Laffey matrix are meant to apply to an attorney who, despite his years of experience in other fields, is practicing in a particular field for the first time.

As three of the cited cases involved claims under Title VII or other statutes prohibiting discrimination and a fourth was a class action challenging the designation of a group of workers as independent contractors (see Tsadik Decl. ¶¶ 11.b.-e.), those decisions are of limited assistance in determining a reasonable rate in HBOR cases. In Pearson, the fifth cited case, however, the plaintiff brought an HBOR claim, and the court approved an hourly rate of $400. See Pearson, 2015 WL 632457, at *8-9. In so ruling, the court had before it two declarations attesting to the reasonableness of a $400 rate for attorneys representing clients in litigation involving real property, and, additionally, conducted its own review and found that other courts in this district had approved rates ranging from $180 to $425 in foreclosure actions. See id.

Plaintiff argues his counsel is entitled to a rate significantly above that awarded in Pearson, as counsel therein had, at the time of the award, fifteen years of litigation experience, whereas plaintiff's counsel has had thirty-four years of experience. Plaintiff also argues the reasonable hourly rates in this district have increased since 2015, when the award in Pearson was made.

Although Tsadik has had thirty-four years of experience, his "primary focus" has been on other types of litigation, specifically, "police misconduct and disability discrimination." (See Tsadik Decl. ¶¶ 3-5.) The instant action was not in Tsadik's "usual area of practice," and, indeed, he advised defense counsel that this matter was his first "mortgage litigation." (See Ladi Decl. ¶ 4.) As the instant action was counsel's first "mortgage litigation" (see id.), and plaintiff has offered no evidence from which the Court could infer that the reasonable hourly rate for HBOR or other types of mortgage cases has increased in the past three years, the Court finds a $400 hourly rate for legal work is reasonable here. See Pearson, 2015 WL 632457, at *8-9.

As to work awarded at a paralegal rate, defendants have offered evidence that their counsel's firm charges from $130 to $150 per hour (see Ladi Decl. ¶ 12), and plaintiff offers no evidence as to a paralegal rate, let alone evidence contrary to that submitted by defendants. The Court finds an hourly rate of $140 for paralegal work is

reasonable here.

### 3. Lodestar Calculation for Time Spent on Work Other than Work Related to Fees

In light of the above, the lodestar for the time spent on work other than fee-related work is $25,522, comprising $23,240 (58.1 hours of legal work at an hourly rate of $400) and $2282 (16.3 hours of paralegal work at an hourly rate of $140).

### 4. Time Spent on Work Related to Fees

As noted, plaintiff seeks an award that includes compensation for 39.6 hours spent preparing the moving papers and reply constituting the instant motion.

Defendants, while acknowledging that work performed to prepare a motion for fees is generally compensable, argue no such fees should be awarded here, on the asserted ground that the motion seeks an "unreasonable" amount of fees. (See Defs.' Mot. at 12:13-16.)

As set forth above, not all of the hours sought for Tsadik's work "representing plaintiff in this litigation" (see Pl.'s Mot. at 10:11-12) are compensable, nor are the compensable hours compensable at the rate sought. Nonetheless, the Court does not find the inclusion of unsuccessful arguments in the motion and reply warrants a complete denial of all fees incurred in preparing those documents. Rather, "fees for fee litigation should be excluded to the extent that the applicant fails to prevail in such litigation." See Commissioner, INS v. Jean, 496 U.S. 154, 163 n.10 (1990). In particular, courts have found it appropriate to reduce the amount of "fees-on-fees" sought by the percentage of "merits fees" sought but not awarded. See Thompson v. Gomez, 45 F.3d 1365, 1366, 1368 (9th Cir. 1995) (affirming award of 87.2% of "fees-on-fees" sought, where plaintiff obtained 87.2% of "merits fees" sought); see also, e.g., Harris v. McCarthy, 790 F.2d 753, 758-59 (9th Cir. 1986) (finding it "entirely appropriate" for district court to award prevailing plaintiff 11.5% of fees-on-fees sought, where plaintiff obtained 11.5% of merits fees sought); Alvarado v. FedEx Corp., 2011 WL 4708133, at *5, 21-22 (N.D. Cal. September 30, 2011) (awarding plaintiff 27% of "fees-on-fees" sought, where "merits

11

1 recovery [was] 27%").

Here, the "merits fees" sought in plaintiff's motion total $88,275, a figure corresponding to 117.7 hours of work at the claimed hourly rate of $750, while the "fees-on-fees" sought total $29,700, corresponding to 39.6 hours of work at the claimed hourly rate of $750. As set forth above, the Court has found plaintiff is entitled to merits fees in the amount of $25,522, which corresponds to 28.9% of the amount originally sought.

Accordingly, the Court finds a reasonable award for work preparing the instant motion is $8583.30, i.e., 28.9% of the amount originally sought for such work.

**6. Adjustment to Lodestar**

The total lodestar as calculated by the Court is $34,105.30 ($25,522 + $8583.30).

Plaintiff argues he is entitled to a lodestar enhancement of 2.0. The Court is not persuaded.

A lodestar may be adjusted where "the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." See Ketchum, 24 Cal. 4th at 1132. The instant action, however, did not require "extraordinary legal skill," as the primary disputed issue was narrow, specifically, whether, at the time defendants recorded the "notice of default or notice of sale," defendants had received from plaintiff a "complete first lien loan modification application." See Cal. Civil Code § 2923.6(c). Further, the risk that counsel would not receive an award of attorney's fees was low, as, by the time Tsadik appeared, plaintiff already had obtained an injunction, which, by agreement of defendants, had been in effect for approximately two months prior to Tsadik's appearance. See Cal. Civil Code § 2924.12(i). Consequently, the Court does not find an enhancement is warranted.

Defendants, citing Harman v. City and County of San Francisco, 158 Cal. App. 4th 407, 425 (2007), argue the Court should adjust the lodestar downward. Again, the Court is not persuaded.

Harman addressed a situation in which a "partially prevailing plaintiff" seeks an

1  award of attorney's fees, in which case a trial court may adjust the lodestar downward "to
2  account for the lack of overall success" on the merits of the claims alleged in the action.
3  See id. (internal quotation and citation omitted). Here, however, plaintiff cannot be said
4  to have only partially prevailed, as he obtained the sole relief available under the HBOR,
5  specifically, injunctive relief to prohibit defendants from foreclosing on his residence
6  pending review of his loan modification application,[8] as well as a loan modification by
7  agreement of the parties.

      Accordingly, the Court declines to adjust the lodestar either upward or downward.

## C. Amount of Costs

      Plaintiff seeks costs in the total amount of $738.49.[9]

      The Court finds reasonable the following costs: the $400 filing fee; the $84.40 cost of service of process; and $26.86 in copying charges. Consequently, costs in the amount of $511.26 will be awarded.

      The Court declines to award the remaining costs plaintiff seeks to recover, specifically, $202.29 in "FedEx mailing costs" and $24.94 in "USPS mailing costs" (see Guillory Decl. ¶ 13), as they pertain to service of documents on McCarthy & Holthus, the law firm that represented Quality, the trustee, which entity, as noted, has never been a party to the instant action.

      Accordingly, plaintiff will be awarded costs in the total amount of $511.26.

//
//
//

---

[8] Under the HBOR, where, as here, the defendant has not recorded a "trustee's deed upon sale," the sole form of relief the plaintiff may seek is "injunctive relief." See Cal. Civil Code § 2924.12(a)(1).

[9] Plaintiff initially sought an additional $1000, the amount he posted with the Clerk of Court as a cash bond. By order filed November 20, 2017, the Court directed the Clerk of Court to return to plaintiff the $1000 cash bond, as well as any accrued interest. Accordingly, to the extent plaintiff seeks to recover said $1000 from defendants, the motion is moot.

13

**CONCLUSION**

For the reasons stated above, plaintiff's motion is hereby GRANTED in part and DENIED in part. Specifically, plaintiff, as the prevailing borrower, is entitled to recover from defendants attorney's fees in the amount of $34,105.30, together with costs in the amount of $511.26, for a total of $34,616.56.

**IT IS SO ORDERED.**

Dated: July 13, 2018

MAXINE M. CHESNEY
United States District Judge